UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 26-CR-149 (MJD/LIB)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL CHRISTIAN PETTIT,<br><br>Defendant. | ) | **GOVERNMENT'S PRELIMINARY OMNIBUS RESPONSE TO DEFENDANT'S MOTIONS TO SUPPRESS AND DISMISS** |

The United States of America, by its undersigned attorneys, hereby respectfully submits its preliminary brief response opposing the defendant's motion to suppress statements (ECF 15), motion to suppress search and seizure (ECF 16), and motion to dismiss count 2 (ECF 19).

The government respectfully requests to further brief these matters after the record is developed at the evidentiary motions hearing, which is presently scheduled for November 12, 2026. (ECF 24).

## CASE BACKGROUND

The government alleges that the defendant, Daniel Christian Pettit, fired his rifle and shotgun at firefighting airplanes near his residence in May 2026, after becoming upset when noise from low-flying aircraft disturbed his dinner. At the time, the aircraft were actively fighting a 40-acre forest fire near the defendant's property. The government alleges that the defendant's gunfire

struck one of the aircraft at least twice, taking it out of service for approximately three days amid spreading wildfires. In a post-arrest interview, the defendant acknowledged he fired dozens of shots as the aircraft flew near his residence. A search of the defendant's residence, carried out pursuant to a state search warrant, uncovered numerous firearms, ammunition, and body armor. On the defendant's phone, searched pursuant to a federal search warrant, investigators found a video in which the defendant recorded the aircraft flying overhead, zoomed in on the victim aircraft, and said, "I got ya, motherf**kers!"

## ARGUMENT

### I. Background on defendant's motions.

The defendant filed three pretrial motions. In the first, he argues that the statements he made on the day of his arrest must be suppressed, because they resulted from what the defendant says was an illegal arrest. (ECF 15). In the second, the defendant seeks to suppress evidence found in his home on the day of his arrest, because he similarly argues the evidence was recovered due to an illegal arrest and search. (ECF 16). Finally, he argues that Count 1—charging the defendant with damaging an aircraft in flight—is not a qualifying crime of violence predicate for Count 2, which charges the defendant with violating 18 U.S.C. § 924(c). Accordingly, the defendant argues that Count 2 should be dismissed.

The government expects to establish at the motions hearing that officers legally arrested the defendant, legally searched his residence, and properly obtained his statement following a *Miranda* waiver. Accordingly, the defendant's motions to suppress should be denied in full.

Additionally, the government will argue that the defendant's motion to dismiss Count 2 lacks merit because, as several courts around the country have found, damaging an aircraft in flight in violation of 18 U.S.C. § 32(a)(1) *is* a qualifying crime of violence for the purposes of § 924(c) offenses.

## II. Law enforcement officers legally arrested the defendant.

### A. At the time of his arrest, probable cause existed to arrest the defendant for numerous offenses under state law.

"The Supreme Court has interpreted the Constitution to permit reasonable seizures of persons [for] … a warrantless arrest based on the officer's determination of probable cause …" *Furlow v. Belmar*, 52 F.4th 393, 401 (8th Cir. 2022). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity," and the probable cause standard "is not a high bar." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018).

In this case, the government will establish at the motions hearing that law enforcement had more than sufficient evidence to establish probable cause to arrest the defendant for *numerous* offenses. Officers were entitled to conduct

a warrantless arrest because, among other reasons, they were in hot pursuit of the defendant. By the time the defendant was taken into custody, probable cause existed to arrest him for the instant offense under either state or federal law. At the time of the arrest, officers possessed a wealth of information about the instant offense, including where the victim aircraft was shot—immediately adjacent to the defendant's property—and had spoken to several neighbors and witnesses who described many shots coming from near the defendant's property around the time the firefighting aircraft was hit. Additionally, a deputy sheriff familiar with the area recalled a prior incident from 2024 in which the defendant had allegedly pointed a laser at passerby and had expressed annoyance regarding float planes near his property. Further, multiple area residents had contacted law enforcement to report prior incidents in which they believed a man near the defendant's residence had pointed or discharged a firearm at or near them.

Additionally, officers had probable cause to arrest the defendant for recklessly discharging a firearm in the presence of officers, while they searched the area adjacent to the defendant's property for evidence. The defendant discharged his firearm while officers were nearby, in marked uniforms and with their vehicles' emergency lights activated. Following the defendant's arrest, the St. Louis County Sheriff's Office submitted a charging request to the St. Louis County prosecutors seeking to charge the defendant for recklessly

discharging a firearm, second-degree assault, first-degree damage to property, and attempted second-degree manslaughter.

The assertion that officers had probable cause to arrest the defendant is consistent with the fact that a state court judge, Chief Judge of the Sixth Judicial District Rachel Sullivan, found there was probable cause to search the defendant's property and issued a search warrant within a hours of the defendant's arrest, based on the same information known to officers when they arrested the defendant.

Because the defendant's arrest was lawful, his subsequent statement following a proper *Miranda* waiver is admissible and should not be suppressed.

**III. Officers were entitled to search the defendant's property.**

**A. Exigency justified an initial search of the property, and officers were allowed to conduct a protective sweep to ensure the scene was safe before executing the search warrant.**

Exigent circumstances to conduct a warrantless search exist where "law enforcement officers have a legitimate concern for the safety of themselves or others." *United States v. Kuenstler*, 325 F.3d 1015, 1021 (8th Cir. 2003). The test for whether an exigency exists is "an objective one focusing on what a reasonable, experienced police officer would believe." *Id.* The government expects to establish at the motions hearing that a reasonable and experienced police officer at the scene of the defendant's arrest would have perceived an

exigency justifying a limited search of the defendant's property before a warrant was obtained.

After the defendant was arrested, officers were entitled to conduct a protective sweep to ensure no dangerous individuals remained at the defendant's property. The caselaw regarding protective sweeps establishes that such sweeps are a well-recognized exception to the warrant requirement. *Maryland v. Buie*, 494 U.S. 325 (1990); *United States v. Alatorre*, 863 F.3d 810, 813 (8th Cir. 2017). "*Buie* authorizes protective sweeps for unknown individuals in a house who may pose a threat to officers as they effectuate an arrest." *Alatorre*, 863 F.3d at 813. Generally, a "protective sweep is permitted under the Fourth Amendment when an officer has articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *United States v. Ortega-Montalvo*, 850 F.3d 429, 434 (8th Cir. 2017) (quotation marks omitted); *United States v. Crisolis-Gonzalez*, 742 F.3d 830, 836 (8th Cir. 2014).

"The inquiry as to the reasonableness and validity of a protective sweep is necessarily fact-specific." *Alatorre*, 863 F.3d at 814. But the Eighth Circuit has admonished that reviewing courts should not second-guess an officer's objectively reasonable steps to ensure officer safety: "In these situations, '[w]e should not, in the quiet of our chambers, look with eagle's eyes to spy out flaws

in the officers' reasoning after the fact.'" *United States v. Green*, 560 F.3d 853, 857 (8th Cir. 2009) (quoting *United States v. Bruton*, 647 F.2d 818, 823 (8th Cir. 1981)). After all, "[o]fficers conducting a protective sweep must act quickly and decisively to minimize the risk of ambush." *Id. See also United States v. Sharpe*, 470 U.S. 675, 686 (1985) (cautioning that when "police are acting in a swiftly developing situation," courts "should not indulge in unrealistic second-guessing" of reasonable police conduct).

This legitimate concern for officer safety is especially critical, as the Eighth Circuit has recognized, when, as here, police conduct an arrest in or near a defendant's home, where additional dangers may lurk. *E.g.*, *Waters*, 883 F.3d at 1026 ("recogniz[ing] the importance of officers' safety when conducting a[n] [in-]home arrest"); *United States v. Davis*, 471 F.3d 938, 944 (8th Cir. 2006) (noting that police protecting against threat of accomplices launching a surprise attack was "particularly important during an in-home arrest, due to the heightened potential for an ambush in unfamiliar surroundings"). *See also Buie*, 494 U.S. at 334 (providing that officers are permitted to take steps to ensure their safety both "after, and while making the arrest.").

Police, therefore, have a legitimate interest "in taking steps to assure themselves that the house in which a suspect has just been arrested is not harboring other persons who are dangerous and who could unexpectedly

launch an attack." *Alatorre*, 863 F.3d at 814. Indeed, courts have long-recognized the significant "risk of danger in the context of an arrest in the home" because "an in-home arrest puts the officer at the disadvantage of being on his adversary's 'turf.'" *Id.* (quoting *Buie*, 494 U.S. at 333). "An ambush in a confined setting of an unknown configuration is more to be feared than it is in open, more familiar surroundings." *Id.* (quoting *Buie*, 494 U.S. at 333).

Here, the officers did not arrest the defendant in his house, but outside of it after he was called out from the residence. But the Eighth Circuit has recognized that protective sweeps may also be justified when arrests take place near a home. *Alatorre*, 863 F.3d at 814 (noting protection of officers conducting arrest near a defendant's home "is a priority recognized by our courts,"); *see also* United States v. Davis, 471 F.3d 938, 944-45 (8th Cir. 2006) (upholding protective sweep of barn after arrest outside of the barn).

Here, officers had just heard a firearm discharged from near the residence. The officers were positioned near the defendant's property and they were entitled to take reasonable steps to ensure their safety after the defendant was taken into custody. The protective sweep was justified by several articulable facts and rational inferences supporting the officers' reasonable belief that someone else could be on the property posing a danger, including that there was a substantial delay responding to officers' commands, officers observing movement inside the residence, and the recent history and

reports of individuals discharging weapons from the defendant's property. Additionally, the government expects to show at the motions hearing that officers took careful steps to ensure no dangerous individuals remained at the property. Although the protective sweep took some time to carry out, that is a testament to the careful approach officers took. Indeed, officers were concerned enough about the potential danger at the property that they used drones and cameras on poles the methodically carry out the sweep. It also took time to sweep multiple outbuildings on the property. After the sweep was completed and other community caretaking functions were completed (more on that below), law enforcement withdrew until they returned to execute the warrant-authorized search for evidence.

**B. Law enforcement was separately justified in carrying out the initial sweep to retrieve the defendant's dog pursuant to their community caretaking function.**

Separately, officers needed to enter the residence to retrieve and care for the defendant's dog. After he was arrested, the defendant informed law enforcement that his dog remained in the locked residence. Officers carefully took the defendant's pet dog into their care so that it would not be abandoned or suffer.

In analyzing an analogous case, the Western District of Wisconsin noted that Minn. Stat. § 343.21 makes in unlawful to "deprive any animal over which the person has charge or control of necessary food, water, or shelter" or to

"abandon any animal." Analyzing a similar scenario in which officers entered a hotel room to retrieve an unattended dog, the court found that "as community caretakers and in fulfillment of their administrative policy and state statute, the police were justified entering [a private hotel room] to remove, shelter and care for Spike in the absence of his owner." *United States v. Procknow*, No. 13-cr-53-wmc, 2013 U.S. Dist. LEXIS 188028, at *56 (W.D. Wis. Nov. 5, 2013).

**C. After obtaining a lawful search warrant, officers then searched the property for evidence.**

After the state court authorized a search warrant for the defendant's property, officers returned and carried out their search for evidence. Officers did not rely on observations from during the protective sweep to obtain the search warrant.

**D. Even if officers had not conducted a protective sweep or entered the property for community caretaking purposes, they would have found the contested evidence from an independent source.**

Any observations the officers made during the protective sweep should not affect the admissibility of evidence obtained pursuant to the state search warrant. Even if the Court found there was no exigency to arrest the defendant or conduct a protective sweep, and that the protective sweep was an illegal search, any evidence observed during the protective sweep would have inevitably been discovered through of the independent source of the subsequent state search warrant. The independent source doctrine would

apply to the situation at hand, because the government can demonstrate: "(1) that the decision to seek the warrant was independent of the unlawful entry—i.e., that police would have sought the warrant even if the initial entry had not occurred—and (2) that the information obtained through the unlawful entry did not affect the magistrate's decision to issue the warrant." *United States v. Anguiano*, 934 F.3d 871, 874 (8th Cir. 2019).

## IV. Damaging an aircraft in violation of 18 U.S. C. § 32(a)(1) as charged in Count 1 of the Indictment is a crime of violence.

Count 1 of the indictment charges the defendant with damaging an aircraft in the special aircraft jurisdiction of the United States, in violation of 18 U.S.C. 32(a)(1). (Indictment, ECF 1). Count 2 charges the defendant with using and discharging a firearm during and in relation to a crime of violence, with Count 1 as the predicate crime of violence. *Id.* The defendant argues in a motion to dismiss Count 2 that damaging an aircraft is "not a crime of violence within the ambit of section 924(c)." (ECF 19 at 1).

The defendant's motion cites no caselaw in support of its argument that damaging an aircraft is not a crime of violence, and acknowledges that Circuit authority has held that damaging an aircraft *is* a qualifying predicate crime of violence. *Id. citing United States v. McGuire*, 706 F.3d 1333 (11th Cir. 2013). Nevertheless, the defendant argues that the Court must consider whether the crime plausibly covers any non-violent conduct.

But courts that have considered the issue have consistently held that damaging an aircraft under 18 U.S.C. § 32(a)(1) is a qualifying predicate crime of violence. In *McGuire*, the Eleventh Circuit analyzed the issue. The court applied the categorical approach to decide the question, "that is, by reference to the elements of the offense, and not the actual facts of [defendant's] conduct." *Id.* at 1336. The Eleventh Circuit concluded that damaging an aircraft in flight under 18 U.S.C. § 32(a)(1) is "categorically a crime of violence." *Id.* at 1338. In reaching this conclusion, the court noted that damaging an aircraft with people on board is "unmistakably violent." *Id.* at 1337. The Court went on to explain that damaging an aircraft in flight "necessarily involves the attempted or threatened destruction of very sensitive property—and quite probably lives as well," and therefore the offense is a "crime[] of violence, and properly accounted predicate[] for the firearms enhancement under §924(c)." *Id.* at 1337.

Other Circuits have likewise recently confirmed that 18 U.S.C. § 32(a)(1) continues to qualify as predicate offense for § 924(c) charges. In *Melaku*, the Fourth Circuit cited *McGuire* and explained that, "18 U.S.C. § 32(a)(1), [which] prohibits the willful damaging or disabling of an aircraft in flight" is an example of a statute that illustrates "the vitality of the force clause language in Section 924(c)(3)(A) involving property of another." *United States v. Yonathan Melaku*, 41 F.4th 386, 393-94 (4th Cir. 2022).

District courts that have considered the issue are in accord. *Menkello v. United States,* No. 2:16-CV-574, 2016 WL 4398517, at *6 (S.D. Ohio Aug. 18, 2016) (Defendant's "conviction on attempted destruction of an aircraft under 18 U.S.C. § 32(a)(1) and (7) plainly satisfies the definition of the 'force clause' of § 924(c)(3)(A), having as an element of the offense 'the use, attempted use, or threatened use of physical force against the person or property of another.'");

Ultimately, there is no basis to hold that damaging an aircraft in flight is not a crime of violence. The great weight of authority—indeed, every case counsel has found that addresses the issue—finds that the offense is a qualifying crime of violence. Because Count 1 is a qualifying crime of violence, Count 2 should not be dismissed.

## V. Conclusion

Because officers had probable cause to arrest the defendant for numerous offenses on May 17, 2026, the defendant's arrest outside his residence was lawful. The statement that the defendant subsequently chose to provide after a *Miranda* waiver was likewise lawful and properly obtained by law enforcement. The law enforcement search of the defendant's residence was carried out pursuant to a valid state search warrant. Before executing the state search warrant, law enforcement entered the defendant's property to carry out a limited protective sweep and community caretaking functions, including to

ensure that the defendant's dog received proper care. The defendant's motions to suppress should be denied in full.

Further, the defendant's motion to dismiss Count 2 should also be denied, because damaging an aircraft in flight is a qualifying crime of violence predicate for the purposes of 18 U.S.C. 924(c).

Date: November 9, 2026

Respectfully Submitted,

DANIEL N. ROSEN
United States Attorney

By: */s/ David Green*
David Green
Assistant U.S. Attorney
Attorney ID No. 397477
david.green3@usdoj.gov
612-664-5600