UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
26-CR-149 (MJD/LIB)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL CHRISTIAN PETTIT,<br><br>Defendant. | ) | GOVERNMENT'S MOTION TO UPHOLD INFORMANT PRIVILEGE AND PREVENT DISCLOSURE OF INFORMANT IDENTITY |

## INTRODUCTION

The United States of America, by its undersigned attorneys, hereby respectfully submits its motion to uphold the informant privilege established by the United States Supreme Court in *Roviaro v. United States*, 353 U.S. 53 (1957) and recognized by the Eighth Circuit in myriad cases since. Specifically, the United States asks the Court to deny the defendant's request for disclosure of the identity of a concerned-citizen tipster who expressed safety concerns about the disclosure of their identity.

While the government seeks to prevent the disclosure of a tipster's identity, the government has nonetheless provided the defense with the names of several other tipsters and witnesses, including (1) the tipster who reported the defendant shooting at them while the tipster cleaned trash from the roadway near the defendant's residence; (2) the caller who reported a 2024 incident involving the defendant pointing a laser (designed to be affixed to a

firearm) at them when passing near the defendant's residence; and, (3) multiple witnesses who heard sounds consistent with gunfire coming from the area of the defendant's residence around the time of the charged conduct.

## FACTUAL BACKGROUND

### I. Alleged Offense Conduct

On August 26, 2026, a grand jury returned a two-count Indictment charging the defendant, Daniel Christian Pettit, with damaging an aircraft in the special aircraft jurisdiction of the United States in violation of 18 U.S.C. 32(a)(1), and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). The charges carry maximum statutory terms of imprisonment of 20 years and life imprisonment, respectively. The charges arise from the defendant allegedly firing his rifle and shotgun at, and hitting, firefighting airplanes near his residence in May 2026. The defendant apparently became upset at the noise from the low-flying aircraft, that were actively battling a 40-acre forest fire in the area, because they disturbed his dinner. The defendant's gunfire allegedly struck one of the aircraft at least twice, endangering the pilot and taking the plane out of service for approximately three days amid spreading wildfires. In a post-arrest Mirandized interview, the defendant acknowledged he fired dozens of shots as the aircraft flew near his residence. A state warrant-authorized search of the defendant's residence resulted in the seizure of numerous firearms,

ammunition, and body armor. On the defendant's phone, searched pursuant to a federal search warrant, investigators found a video in which the defendant recorded the firefighting aircraft flying overhead, zoomed in on the victim aircraft, and said, "I got ya, motherf**kers!"

## II. Defendant's Pretrial Motions and November 12 Motions Hearing

The defendant filed three pretrial motions seeking to suppress evidence and dismiss Count 2. (ECFs 15, 16, 19). On November 12, 2026, the Court held an evidentiary hearing on the motions. (ECF 28). During the evidentiary motions hearing, the United States called a witness from the St. Louis County Sheriff's Office who investigated the gunshot damage sustained by the firefighting aircraft. Sgt. Eric Hanegmon was also the on-scene commander on the day of the defendant's arrest.

During the hearing, Sgt. Hanegmon described the course of the investigation, including a critical incident that occurred at the defendant's residence on the day of his arrest. On that day, officers searched for evidence in public areas adjacent to the defendant's property, including by using specially trained canines that can detect discharged firearms ammunition. As officers in uniforms and marked squad cars searched for evidence near the defendant's home, they heard a single gunshot, which they believed came from in or near the defendant's residence. Based in part on prior reports from

members of the public that described the defendant menacing members of the community with suspected firearms, officers assessed there was an ongoing danger to the public. To mitigate the risk to the public, law enforcement shut down a major highway adjacent to defendant's property, causing sigificant delays for members of the public. Using a public address system, law enforcement directed the defendant out of his home. After approximately 45 minutes of noncompliance, the defendant surrendered and was arrested. To secure the defendant's property for a forthcoming search warrant execution and to ensure no dangers remained at the property, law enforcement conducted a limited protective sweep. As part of the sweep, law enforcement retrieved the defendant's dog to ensure it was not abandoned and received proper care. Once a search warrant was authorized later that same day, law enforcement returned to execute the warrant and search for evidence.

## III. The Defense Never Before Requested the Identities of Tipsters

Prior to the hearing, the defense never submitted *any* request to the government—formally or informally—for the identities of the tipsters related to the investigation. Rather, it was only during the defense's cross-examination of Sgt. Hanegmon that the defense first requested the identities of the tipsters. Law enforcement reports provided to the defense in discovery, however, referenced the various tips to law enforcement, which collectively described several instances in which the defendant may have brandished or discharged

firearms to intimidate and threaten members of the community. At the motions hearing, the government's witness testified that law enforcement received reports from tipsters related to these three prior incidents:[1]

1. **2024 firearm/laser pointing incident**: the government's witness explained that a Deputy Sheriff responded to an incident involving the defendant in 2024. A caller believed that someone at Mr. Pettit's residence pointed a firearm with a laser affixed to it at the victims as they passed by the defendant's residence in all-terrain vehicles. The defendant admitted to the Deputy that he had pointed a laser at the passerby because they were playing loud music at night, but he claimed that the laser was mounted to a "stick," not a gun. The government admitted the Deputy's body-worn camera footage from this incident at the November 12 motions hearing (Govt. Ex. 4). The identity of the caller who reported this incident has been disclosed to the defense. The incident number documenting the 2024 incident was also previously disclosed to the defense. (Bates 417).

[1] There are several additional witnesses who were interviewed by law enforcement during a canvass of the area after the firefighting aircraft was shot and hit. Several of these witnesses reported hearing noises consistent with potential gunshots from the area of the defendant's residence around the time of the charged offense. The names of these witnesses have been provided to the defense through reports and body worn camera footage.

2. **Firearm discharge while resident cleaned trash from roadway adjacent to defendant's property**: another area resident reported that in the year prior, she cleaned trash with a sibling along the highway adjacent to Mr. Pettit's property. As the pair approached the defendant's residence, he retrieved a firearm and shot it towards them. This tipster's identity has been disclosed to the defense. (Bates 418).

3. **Dump truck driver reports concerning firearms encounter near Mr. Pettit's residence**: another area resident reported that he drove a dump truck near Mr. Pettit's residence on a prior date. The driver noted he heard a "popping" sound after using his jake break (which creates a loud noise) near the defendant's property. The dump truck driver noted he observed a male holding a rifle nearby, and that after he ceased using his jake break, the popping sounds stopped. This report was referenced in materials provided to the defense (Bates 3797). However, this tipster's identity has not been provided to the defense, because the individual told law enforcement he wished to remain anonymous due to safety concerns.

## IV. During Cross-Examination at the Motions Hearing the Defense for the First Time Sought the Identities of the Tipsters

For the very first time, during cross-examination of the government's witness at the motions hearing, the defense sought the names of the tipsters.

The defense had never once previously requested the information or filed a motion to compel production of the tipsters' identities. The government objected to providing the identities of the tipsters who had expressed safety concerns about the disclosure of their identities. Tr. 2.[2] The government attempted to make a record setting out the legal basis for its position and offered to supply caselaw in support. Tr. 8-10. The Court declined to hear argument at the time, and suggested that the government's position should be provided in the future with additional context available to the Court. *Id.* Accordingly, the government now submits this motion to present its position for the Court's consideration.

When the government and defense counsel conferred as directed by the Court on the morning of November 16, 2026, government counsel learned that the defense is seeking the identities of any person or persons who expressed general concerns for law enforcement safety related to Mr. Pettit. Before learning that the defense sought this information, the government focused its attention on confirming the identities of the three tipsters who reported specific prior incidents involving the defendant, or those who witnesses who reported that they observed or heard sounds on the day of the charged offense. The government is working expeditiously with law enforcement to confirm the

[2] Due to the short timeframe available, the government obtained a partial transcript of the November 12, 2026 motions hearing. That partial transcript is cited as "Tr."

identities of any person or persons who reported general safety concerns related to law enforcement interacting with Mr. Pettit and will update defense counsel promptly when further information is obtained.

## ARGUMENT

### I. Legal Standard

The United States Supreme Court and the Eighth Circuit Court of Appeals have long recognized the government's privilege to withhold the identity of a confidential informant. *See United States v. Roviaro*, 353 U.S. 53, 59 (1957); *McCray v. Illinois*, 386 U.S. 300, 310 (1967); *United States v. Oliver*, 950 F.3d 556, 562 (8th Cir. 2020) ("The Government has a privilege to withhold the identity of its confidential informants.") "In determining whether disclosure is required, the threshold issue is whether the informant is a material witness." *Carpenter v. Lock*, 257 F.3d 775, 779 (8th Cir. 2001). "A trial court abuses its discretion if it orders disclosure absent a showing of materiality." *United States v. Cisneros*, No. 14-cr-00402 (MJD/HB), 2021 U.S. Dist. LEXIS 185461, at *2 (D. Minn. Sep. 28, 2021) *quoting United States v. Harrington*, 951 F.2d 876, 877 (8th Cir. 1991); *see also Oliver*, 950 F.3d at 562 (in determining whether to disclose an informant's identity, "materiality" is of central importance).

To overcome the government's informant privilege, a defendant must provide "more than speculation that the evidence an informant may provide

will be material." *United States v. Grisham*, 748 F.2d 460, 463-64 (8th Cir. 1984). A defendant "bears the burden of demonstrating that disclosure is material to the outcome of his case; in other words, that disclosure is vital to ensure a fair trial." *United States v. Gonzalez-Rodriguez*, 239 F.3d 948, 951 (8th Cir. 2001). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Lapsley*, 334 F.3d 762, 764 (8th Cir. 2003).

Importantly, disclosure is typically not required when the informant merely conveys information to the government but neither witnesses nor participates in the offense." *Id.* (citations and marks omitted). The caselaw regarding informant disclosure frequently distinguishes between "mere tipsters" and "material witnesses." "Mere tipsters" are individuals who convey information to law enforcement but do not witness or participate in the offense. *Carpenter*, 257 F.3d at 779. For mere tipsters, "disclosure is not required." *Id.*

**II. Analysis**

Here, the dump truck driver was a "mere tipster," not a "material witness." He did not witness the charged offense *at all*, much less as a material witness, nor did he participate in the offense. Rather, the tipster submitted information to law enforcement about *a completely separate incident* related to

troubling conduct with a firearm at Mr. Pettit's property. The tipster reported the information to law enforcement with a request that their identity remain anonymous. Law enforcement conferred with the tipster after the November 12 motions hearing, and the government understands that the tipster still wishes to remain anonymous.

The tipster's information, however, merely contributed to probable cause to arrest the defendant, probable cause to search his property, and the reasonable basis to carry out a protective sweep of his property. The tipster's report of a separate incident involving intimidating behavior with firearms following loud noises at the defendant's property made it more likely that the defendant was the culprit who shot loud planes near his property. But just because the tipster contributed to probable cause does not make him a material witness. The tipster's information also properly informed officers' assessment of the need to conduct a protective sweep. Someone like the defendant, who showed a cavalier willingness to menace others with firearms, clearly poses a greater danger to law enforcement and the public and warrants significant precautions. But again, this does not transform the tipster into a material percipient witness to the charged offense.

During the motions hearing, the defense suggested (for the first time) it needed the tipster's identity, because the dump truck driver's tip was included in the affidavit in support of the state search warrant to search the defendant's

property. But tipsters do not become "material witnesses" to charged conduct simply because their observations contribute to the basis for a search warrant. Indeed, the Eighth Circuit has ruled just the contrary. *See, e.g., United States v. Hollis*, 245 F.3d 671, 674 (8th Cir. 2001) ("[T]he identity of a 'tipster' whose observations formed the basis for a search warrant but who is not a necessary witness to the facts *is not subject to compulsion*.") (emphasis added). Additionally, although this case is in its early stages, the government does not presently intend to call the dump truck driver as a witness at trial.

Because the defense has not met its burden to demonstrate that the dump truck driver tipster is a "material witness" to the charged offense as opposed to a mere tipster, under Eighth Circuit precedent it would amount to an abuse of discretion for this Court to compel the government to reveal the tipster's identity. The dump truck driver is an axiomatic "mere tipster," and the defense has supplied no basis to overcome the "strong presumption" against disclosing the identity of the tipster. *United States v. Lindsey*, 284 F.3d 874, 877 (8th Cir. 2002) (confirming that a defendant's "disclosure request will be denied where the information is sought only to attack an affidavit supporting the search warrant and there is no showing how the information would establish innocence.")

Contrasting with the defense's unproven need for the tipster's identity, the tipster expressed serious concerns about their safety if their identity is

revealed. There is a compelling interest in protecting the tipster's identity from disclosure, and the defense has failed to overcome the strong presumption against the disclosure of the identity of a mere tipster informant.

Alternatively, if the Court disagrees with the government's position and finds that the tipster is a material witness requiring disclosure of their identity, the government respectfully asks that any production take place after entry of an appropriate protective order to alleviate the tipster's safety concerns.

**III. Conclusion**

For the foregoing reasons, and consistent with the precedent cited above, the Court should find that the government is not required to disclose the identity of the dump truck driver tipster.

Date: November 16, 2026

Respectfully Submitted,

DANIEL N. ROSEN
United States Attorney

By: */s/ David Green*
David Green
Assistant U.S. Attorney
Attorney ID No. 397477
david.green3@usdoj.gov
612-664-5600